IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

OUSMANE FALL                                                              PETITIONER

v.                                      Case No. 4:26-cv-04010

WAYNE EASLEY, in his capacity as
Sheriff of Miller County; and TODD LYONS,
in his capacity as Acting Director, Immigration
and Customs Enforcement                                                   RESPONDENTS

**ORDER**

Before the Court is a Report and Recommendation filed on March 30, 2026, by the

Honorable Spencer G. Singleton, United States Magistrate Judge for the Western District of

Arkansas. (ECF No. 10). Petitioner Ousmane Fall ("Fall") filed objections. (ECF No. 11). The

Court finds the matter ripe for consideration.

## I. BACKGROUND

Fall is a citizen and national of Senegal who entered the United States on December 1,

2023, at the U.S./Mexico border without inspection.[1]  Once in the United States, Fall was

apprehended by Customs and Border Patrol ("CBP"). Fall was then released, issued a Notice to

Appear, and placed in removal proceedings, wherein he was charged as having entered the United

States without admission or inspection. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Fall filed for asylum and

was issued a valid employment authorization and social security number. Fall worked lawfully in

the United States as a CDL Truck Driver.

On February 14, 2026, Fall was detained by the Arkansas Highway Patrol, which was

cooperating with Immigration and Customs Enforcement ("ICE"), at a weigh station while he was

---

[1] The following facts come from Fall's petition for writ of habeas corpus. (ECF No. 2).

working as a truck driver. Fall was arrested and taken to Miller County jail to await transfer to ICE custody. Fall was transferred to and is currently located in the Jackson Parish Correctional Center in Louisiana.[2] Fall alleges that the Department of Homeland Security ("DHS") has denied or will deny him release from immigration custody, under 8 U.S.C. § 1225. Fall asserts a statutory and constitutional challenge to his detention. First, Fall argues that his detention is governed by 8 U.S.C. § 1226(a), which allows for release on conditional parole or bond, not § 1225(b)(2)(A), which authorizes detention without bond. Second, Fall argues that his detention without a bond redetermination hearing violates his right to due process under the Fifth Amendment.

On March 30, 2026, Judge Singleton issued the instant Report and Recommendation, recommending that the Court deny Fall's habeas petition. (ECF No. 10). Judge Singleton reasons that Fall's statutory argument fails in light of the recent Eighth Circuit decision in *Avila v. Bondi*, --- F.4th ---, No. 25-3248, 2026 WL 819258, at *3-6 (8th Cir. Mar. 25, 2026) (holding that an alien who entered into the United States without inspection or admission is subject to mandatory detention without bond under § 1225(b)(2)(A) because the terms "applicant for admission" and "seeking admission" are synonymous). Judge Singleton further reasons that Fall's constitutional due process claim lacks merit because the Supreme Court held that the government need not conduct individualized bond hearings before detaining aliens in *Demore v. Kim*, 538 U.S. 510, 528 (2003) (upholding § 1226(c)'s mandatory detention scheme against a challenge that aliens had a due process right to individualized bond hearings). On April 13, 2025, Fall filed his timely objections to the Report and Recommendation. (ECF No. 11).

---

[2] *See* https://locator.ice.gov/odls/#/search (last visited April 16, 2026). Fall's Agency Number ("A-Number") is A245-536-813. Magistrate Judge Singleton found that this Court retains jurisdiction over this petition for habeas corpus relief despite Fall's transfer to Louisiana. (ECF No. 10, at 2 n.1). No party has objected to Judge Singleton's jurisdictional finding, and this Court agrees. *See Weeks v. Wyrick*, 638 F.2d 690, 692 (8th Cir. 1981) ("Once the custodian is properly served, subsequent transfer of the petitioner does not cause a loss of habeas corpus jurisdiction in the original district.").

## II.  DISCUSSION

The Court may designate a magistrate judge to hear pre- and post-trial matters and to submit to the Court proposed findings of fact and recommendations for disposition.  28 U.S.C. § 636(b)(1).  Within fourteen days of receipt of a magistrate judge's report and recommendation, "a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); *accord* Local Rule 72.1(VII)(C).  After conducting an appropriate review of the report and recommendation, the Court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1).

"[T]he specific standard of review depends, in the first instance, upon whether or not a party has objected to portions of the report and recommendation."  *Anderson v. Evangelical Lutheran Good Samaritan Soc'y*, 308 F. Supp. 3d 1011, 1015 (N.D. Iowa 2018).  Generally, "objections must be timely and specific" to trigger *de novo* review.  *Thompson v. Nix*, 897 F.2d 356, 358-59 (8th Cir. 1990).  "When conducting a *de novo* review, the district court makes its own determinations of disputed issues and does not decide whether the magistrate's proposed findings are clearly erroneous."  *Branch v. Martin*, 886 F.2d 1043, 1045 (8th Cir. 1989) (citations omitted).

In the instant case, Fall only objects to Judge Singleton's recommendation that his due process claim be dismissed.[3]  Fall argues that *Demore* does not preclude his due process claim because *Demore* considered the constitutionality of mandatory detention for criminal aliens subject to § 1226(c), rather than the constitutionality of mandatory detention for noncriminal aliens falling under § 1225(b)(2)(A).  Fall then argues that the balancing test established in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) applies here and requires Fall be provided a bond hearing.  The Court

---

[3] Fall admits that his statutory argument was foreclosed by the recent Eighth Circuit *Avila* decision and does not object to Judge Singleton's recommendation regarding this argument.  (ECF No. 11, at 2).

finds that Fall's objections are timely and specific.  Thus, the Court will conduct a *de novo* review of Fall's constitutional due process claim.  *See Thompson*, 897 F.2d at 358-59.

### A.  Applicability of *Demore* and *Banyee*

Fall argues that *Demore* does not preclude his due process challenge because *Demore* narrowly considered and upheld the constitutionality of § 1226(c), which governs the detention of criminal aliens, not the constitutionality of mandatory detention under § 1225(b)(2)(A).  Fall distinguishes the Eighth Circuit case *Banyee v. Garland* for the same reason.  115 F.4th 928, 931 (8th Cir. 2024) (holding that an alien's due process rights were not violated when he was detained for over a year without bond pursuant to § 1226(c) while waiting for a removal decision).

Section 1226(c) governs the detention of criminal aliens and requires the Attorney General to "take into custody any alien" who is inadmissible or deportable for committing certain offenses.  8 U.S.C. § 1226(c)(1).  Section 1225(b)(2) governs the inspection and removal of "other aliens."  *Id.* § 1225(b)(2).  It requires that an alien "be detained for a [removal] proceeding" if "the examining immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted."  *Id.* § 1225(b)(2)(A).

In *Demore,* the Supreme Court considered whether the detention of Hyung Joon Kim pending his removal hearing pursuant to § 1226(c) violated his due process rights under the Fifth Amendment.  538 U.S. at 513.  Kim was a citizen of the Republic of South Korea who had been convicted of first-degree burglary in 1996 and of "petty theft with priors" in 1997.  *Id.*  The Immigration and Naturalization Service ("INS") charged Kim with being deportable in light of these convictions and detained him pending his removal hearing.  *Id*.  The Supreme Court held that Congress may require "deportable criminal aliens . . . [to] be detained for the brief period necessary for their removal proceedings" without running afoul of the Fifth Amendment.  *Id.*

The Supreme Court reasoned that though it is "well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," it had recognized that detention is a constitutionally valid aspect of deportation proceedings. *Id.* at 523 (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)); *see, e.g., Carlson v. Landon*, 342 U.S. 524, 543 (concluding that INS could deny bail to alien Communist Party members "by reference to the legislative scheme" without any finding of flight risk). The Supreme Court explained that Congress adopted § 1226(c) after considering evidence that "deportable criminal aliens who remained in the United States often committed more crimes before being removed" and that "more than 20% of deportable criminal aliens failed to appear for their removal hearings" if released. *Demore*, 538 U.S. at 519-20. Therefore, the Supreme Court concluded that Kim, "a criminal alien who has conceded that he is deportable, for the limited period of his removal proceedings," is governed by the cases finding that detention during removal proceedings is "constitutionally permissible," and rejected his facial constitutional challenge to the mandatory detention required by § 1226(c). *Id.* at 531.

Over twenty years later, the Eighth Circuit considered a constitutional challenge to the duration of time an alien was detained under § 1226(c). *Banyee v. Garland*, 115 F.4th 928, 930 (8th Cir. 2024). In *Banyee v. Garland*, Nyynkpoa Banyee, a citizen of Ivory Coast and lawful permanent resident of the United States was detained during his deportation proceedings under § 1226(c) after being convicted of a series of crimes and argued that the length of his detention—over one year—violated his due process rights. *Id.* The Eighth Circuit held, citing *Demore*, that Banyee's year-long detention under § 1226(c) did not violate his due process rights because "[d]etention during deportation proceedings [i]s . . . constitutionally valid." *Id.* at 931 (citing *Demore*, 538 U.S. at 523).

The Eighth Circuit in *Banyee* then declined to apply a "multi-factor 'reasonableness' test,"

such as the interest balancing test in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), because the Supreme Court in "*Zadvydas* and *Demore* have already done whatever balancing is necessary." *Id.* at 933. In *Demore*, the Supreme Court reasoned that detention under § 1226(c) "necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." 538 U.S. at 528.; *see also Zadvydas*, 533 U.S. at 682 (linking the reasonable time limitation of detention to the likelihood of removal of the alien in the reasonably foreseeable future). *Demore* did not balance the liberty interests of aliens outside of the deportable criminal aliens governed by § 1226(c). 538 U.S. at 528.

Fall argues that the holdings in *Demore* and *Banyee* do not preclude his as-applied due process challenge to detention under § 1225(b)(2)(A) because those cases are narrowly focused on the constitutionality of detention under § 1226(c). The Court agrees, though it notes that district courts in the Eighth Circuit are split on this issue. *See, e.g., Rujano-Obeso v. Arnott*, No. 6:26-cv-3176-MDH, 2026 WL 963337, at *2 (W.D. Mo. Apr. 9, 2026) (finding that *Demore* did not preclude a petitioner's due process challenge to his detention under § 1225(b)(2)(A) because *Demore* only considered "detention during removal proceedings for a limited class of deportable aliens" who had committed serious crimes under § 1226(c)); *E.M. v. Noem*, No. 25-cv-3975 (SRN/DTS), 2025 WL 3157839, at *9 (D. Minn. Nov. 12, 2025) (finding that *Banyee* did not preclude a non-criminal alien petitioner's due process challenge to his detention under § 1225(b)(2)(A) because *Banyee* addresses detention under § 1226(c) for criminal aliens); *Leiva v. Berg*, No. 4:26CV3023, 2026 WL 948430, at *4 (D. Neb. Apr. 8, 2026) (reasoning that *Banyee* and *Demore* stand for the principle that all mandatory detention for deportable aliens during pending removal proceedings is constitutionally permissible and denying a petitioner's challenge

6

to his detention under § 1225(b)(2)).

Since *Demore* explicitly considers a facial challenge to the mandatory detention of criminal aliens under § 1226(c) and *Banyee* considers a challenge to the duration of detention of a criminal alien under § 1226(c), the Court finds that those cases are distinguishable from Fall's challenge to his detention under § 1225(b)(2)(A) as an alien with no criminal background. *See Demore*, 538 U.S. at 531; *and see Banyee*, 115 F.4th at 930.

Further, the Supreme Court has suggested in cases following *Demore* that *Demore* did not foreclose all constitutional due process challenges to the mandatory-detention requirement in immigration laws. For example, in *Jennings v. Rodriguez*, which held that neither § 1225(b)(1) and (b)(2) require periodic bond hearings under statutory interpretation principles, the Supreme Court explicitly declined to consider the respondent's arguments that those provisions would violate the Due Process Clause of the Fifth Amendment if bond hearings were not required. 583 U.S. 281, 291, 297, 312 (2018). Instead, the Supreme Court remanded the constitutional challenge to the Court of Appeals, which had not addressed that argument on the merits below. *Id.* at 312; *see also Neilsen v. Preap*, 586 U.S. 392, 420 (2019) (stating that its decision interpreting the meaning of § 1226(c) to "does not foreclose as-applied [constitutional due process] challenges" to § 1226(c)). If, as Respondents argue, *Demore* stands for the broad rule that the Government may constitutionally detain all deportable aliens without bond during their pending removal proceedings, why would the Supreme Court leave due process challenges to mandatory detention under § 1225(b) open? (ECF No. 6, at 10 n.5). Accordingly, the Court agrees with Fall that *Demore*'s holding answers the narrow question of whether § 1226(c) was facially unconstitutional and therefore does not foreclose due process challenges to other as-applied constitutional challenges to mandatory detention under § 1225(b)(2)(A).

Finally, Respondents argue that Fall's procedural due process challenge fails as a matter of law because the Supreme Court in *Department of Homeland Security v. Thuraissigiam* held that alien "applicant[s] for admission" have only the procedural rights that Congress has chosen to provide, and § 1225(b)(2)(A) does not require bond hearings. 591 U.S. 103, 140 (2020); (ECF No. 6, at 9). The Court finds that *Thuraissigiam* is inapplicable here. In *Thuraissigiam*, the Supreme Court reasoned that an alien who tries to enter the country illegally (and is thus an "applicant for admission") and who is "detained shortly after unlawful entry" has not "effected an entry." *Id.* at 140. Thus, that alien remains "on the threshold of initial entry" and cannot claim due process rights beyond those provided by Congress. *Id.* at 107, 140. The Supreme Court held that the alien in *Thuraissigiam* did not effect an entry into the United States because he was detained within 25 yards of the border after entry and therefore possessed only the due process rights regarding his admission that Congress provided by statute. *Id.* (holding that an alien's due process rights were not violated because he was accorded all process provided by § 1252(e)(2), which does not require judicial review of his asylum eligibility determination).

In this case, though Fall is an "applicant for admission" (and is also "seeking admission" under *Avila*), he is not "on the threshold of initial entry" because he has lived and lawfully worked in the United States since December 1, 2023.[4] (ECF No. 2, at ¶ 2); *See Thuraissigiam*, 591 U.S. at 140.; *see Avila*, 2026 WL 819258, at *3 (finding the phrases "applicant for admission" and "seeking admission" synonymous); *see also Zheng v. Mullin*, No. 6:26-cv-3179-MDH, 2026 WL 963336, at *2 (W.D. Mo. Apr. 9, 2026) (distinguishing *Thuraissigiam* when the petitioner had lived

---

[4] Nor does Fall fit into the category of "aliens who arrive at ports of entry" and were "paroled elsewhere in the country for years pending removal" whom the *Thuraissigiam* Court explained are treated "as if stopped at the border" for due process purposes. 591 U.S. at 139 (citation omitted). In his petition, Fall alleges that he was apprehended by CBP in the United States and released after being charged as having entered the United States without admission or inspection under § 1182(a)(6)(A)(i). (ECF No. 2, at ¶ 3); *See* 8 U.S.C. § 1182(a)(6)(A)(i) (inadmissible aliens present in the United States without being admitted or paroled). Thus, Fall was not "paroled" in the United States pending removal.

in the United States for over a year before he was detained under § 1225(b)(2)(A) and finding that the petitioner's due process rights were violated).  Unlike the alien in *Thuraissigiam*, Fall has "effected an entry" into this country and enjoys "certain constitutional protections available to persons inside the United States [that] are unavailable to aliens outside of our geographic borders." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citations omitted).  "Once an alien enters the country," the Due Process Clause applies to them, regardless of whether their presence is lawful, unlawful, temporary, or permanent.  *Id.* (explaining that the Due Process Clause protects aliens subject to a final order of deportation, though the nature of that protection may vary depending on status or circumstance).  Accordingly, the Court finds that Fall's due process claim is not barred by the Supreme Court's holding in *Thuraissigiam*.

Finding that Fall's due process challenge is not precluded, the Court must next determine whether Fall's detention without bond under § 1225(b)(2)(A) violates his due process rights.

### B. *Mathews* Factors

Fall argues that the Court should apply the balancing test established in *Mathews v. Eldridge*, and that the *Mathews* factors weigh in his favor.  424 U.S. 319, 335 (1976).  Respondents argue only that Fall has no due process rights pursuant to *Demore* and *Thuraissigiam* and do not engage with the *Mathews* factors.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  To determine whether the procedures afforded are constitutionally sufficient, courts must consider three distinct factors:  (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural

9

safeguards;" and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335; *see Banyee*, 115 F.4th at 933 (noting that the *Mathews* reasonableness test ordinarily determines what process is due for detained aliens, but that *Demore* and *Zadvydas* already did "whatever balancing is necessary" to determine due process in the case of a deportable criminal alien detained for a year under § 1226(c)).

The Court finds that the first interest—Fall's private interest that will be affected by the official action—favors Fall. "The interest in being free from physical detention" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Freedom from detention "lies at the heart of the liberty that [the Due Process] Clause protects," *Zadvydas*, 533 U.S. at 690, and Courts must therefore be "careful not to 'minimize the importance and fundamental nature' of the individual's right to liberty." *Hamdi*, 542 U.S. at 529 (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). Accordingly, the Court finds that Fall, who has spent over two years at liberty in the United States, has a strong interest in being free from physical detention. *See Ochoa v. Vergara*, No. 1:26-CV-266-RP, 2026 WL 482211, at *3 (W.D. Tex. Feb. 20, 2026) (weighing the first interest in favor of a petitioner who had spent over a year at liberty in the United States); *Muse v. Mullin*, No. 25-CV-4024-CJW-MAR, 2026 WL 1008532, at *4 (N.D. Iowa Apr. 14, 2026) (reasoning that a petitioner acquired a liberty interest in release when he was released after being served a Notice to Appear charging him under 8 U.S.C. § 1182(a)(6)(A)(i)).

The second factor—the risk of an erroneous deprivation of Fall's liberty interests if a bond hearing is denied, and the probable value of procedural safeguards—also weighs in favor of Fall. Fall argues that the risk of erroneous deprivation is high because Respondents have presented no evidence in the record to suggest that Fall is a flight risk or a danger to his community. (ECF No.

10

11, at 8). The Court agrees. Fall has no opportunity to contest the reasonableness of his detention without a bond hearing, "meaning the risk of erroneous deprivation lies in this 'automatic continued deprivation of liberty for a noncitizen.'" *Ochoa*, 2026 WL 482211, at \*3. Further, the value of additional procedural safeguards is high because granting Fall a bond hearing, in which the government demonstrates his danger or flight risk, will reduce the risk of erroneous deprivation without imposing significant burdens on the government. *See E.M.*, 2025 WL 3157839, at \*10 (weighing the second factor in favor of a petitioner detained under § 1225(b) without a bond hearing). The government previously provided bond hearings to aliens detained under the same circumstances as Fall, and Respondents make no argument that providing a bond hearing to Fall would be a substantial burden. *See E.M.*, 2026 WL 1008532, at \*4 (quoting *Mathews*, 424 U.S. at 335) ("[I]n looking at the risk of erroneous deprivation, courts consider the costs of additional procedure[s] 'including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'"). Accordingly, the Court finds the second factor weighs in favor of providing Fall a bond hearing.

Finally, the *Mathews* third factor is the government's interest, which is to "be assessed in the public interest." *Mathews*, 424 U.S. at 347-48. The government has an interest in enforcing our immigration laws, including by "ensuring noncitizens appear for their removal hearings and do not pose a risk to the communities in which they live." *Ochoa*, 2026 WL 482211, at \*3 (quoting *Vieira v. De Anda-Ybarra*, 806 F. Supp. 3d 690, 701 (W.D. Tex. 2025)). However, those concerns may be addressed at a bond hearing where the government considers Fall's danger to the community and flight risk. *Id.* (reasoning the same). Though the government has an interest in "conserving scarce fiscal and administrative resources," the value of the additional safeguards in preventing erroneous deprivation of Fall's liberty interests is high. *Mathews*, 424 U.S. at 348; *see*

11

*Muse*, 2026 WL 1008532, at * 4 (considering a petitioner's strong interest in release against the government's "relatively minimal" burden in providing a bond hearing). As noted above, the government previously provided bond hearings to aliens like Fall, and Respondents do not argue that the burden in providing Fall a bond hearing is substantial.

Accordingly, the Court finds that the *Mathews* factors weigh in favor of providing Fall with a bond hearing. *See Muse*, 2026 WL 1008532, at *5 (requiring the government to provide a similarly situated petitioner detained under § 1225(b)(2) a bond hearing after weighing the *Mathews* factors). "When the [g]overnment seeks to continue detaining someone it previously released, fairness demands that the [g]overnment shoulder the burden of justifying that detention." *Id.* (quoting *Dambreville v. Noem*, No. 4:25-cv-00514-SMR-SBJ, 2026 WL 602174, at *5 (S.D. Iowa Jan. 12, 2026)). Consequently, the government will bear the burden to demonstrate Fall's dangerousness or flight risk at his bond hearing.

### III.  CONCLUSION

For the reasons above, the Court respectfully **DECLINES TO ADOPT** the Report and Recommendation (ECF No. 10). The Court finds that Ousmane Fall's Petition for Writ of Habeas Corpus (ECF No. 2) should be and hereby is **GRANTED**. The Court **ORDERS** that Respondents provide Fall an individualized bond hearing before an immigration judge, at which the government bears the burden to demonstrate Fall's dangerousness or flight risk, within **ten (10) days** of the date of this Order. Within **twenty (20) days** of the date of this Order, Respondents shall provide the Court with a status update concerning the results of the bond hearing conducted pursuant to this Order.

**IT IS SO ORDERED**, this 17th day of April, 2026.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge

12